IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MARLON J. WHITE,
    Plaintiff,

v.                                              Civil No. 3:20cv49 (DJN)

B. MAYFIELD, *et al.*,
    Defendants.

**MEMORANDUM OPINION**

Plaintiff Marlon J. White ("Plaintiff" or "White"), a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action[1] (ECF No. 1), and subsequently filed a Particularized Complaint (ECF No. 13). This matter comes before the Court on the Motion to Dismiss (ECF No. 27) filed by Defendants B. Mayfield, C. Putney, Marcus Elam, and Tracy Ray, and for evaluation of the Particularized Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.[2] For the reasons stated below, the Court will GRANT Defendants' Motion (ECF No. 27) and DISMISS the Particularized Complaint (ECF No. 13) and the action.

---

[1]    The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2]    Defendant V.M. Washington has not appeared in the action. However, no need exists to serve her with process, because White fails to state a viable claim for relief against Defendant Washington.

## I.    PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines that the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A (mandating dismissal if the Court finds either grounds present). The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard borrows the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a court takes plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic

2

recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring) (stating that the law does not require "district courts to assume the role of advocate for the *pro se* plaintiff); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (affording liberal construction "does not require those courts to conjure up questions never squarely presented to them").

## II.   SUMMARY OF ALLEGATIONS AND CLAIMS

While White was incarcerated in the Baskerville Correctional Center ("BCC"), BCC approved him to correspond with his son, who was then confined in the Portsmouth City Jail. (ECF No. 13, at 3.)[3] On July 9, 2019, while still confined at BCC, White received a misconduct

---

[3]    The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling, and omits the emphasis in the quotations from the parties' submissions.

charge. (*Id.*)  Nevertheless, no hearing ever occurred with respect to that misconduct charge, and White was transferred to the Greensville Correctional Center ("GCC"). (*Id.*)

Upon his transfer to GCC, White submitted a request to be approved to correspond with his son, who was still incarcerated in the Portsmouth City Jail. (*Id.*)  On July 30, 2019, Defendant Mayfield denied White's request to correspond with his son. (*Id.*)  Defendant Mayfield informed White that he denied the request, because White had received a disciplinary charge on July 9, 2019, and that he must remain charge-free for six months in order for the request to be approved. (*Id.*)  Mayfield informed White that he could renew his request on January 9, 2020, and, as long as he remained charge-free, the request would be approved. (*Id.*)

White filed informal complaints and grievances regarding the denial of the ability to correspond with his son. (*Id.* at 4.)  Defendant Warden Putney deemed White's grievance and appeal unfounded. (*Id.*)  In his response to White's grievance, Warden Putney, stated, in pertinent part:

> An investigation into your complaint indicates that this grievance is governed by Operating Procedure 803.1, Offender Correspondence.  Offenders housed in DOC facilities are prohibited from sending or receiving correspondence with persons housed . . . in local, state, or federal, adult, or juvenile correctional facilities and jails without prior written approval of the Facility Unit Heads at both facilities involved.  Approval of correspondence privileges should be limited to the offender's documented immediate family.
> Further investigation reveals that per V. Washington, Assistant Warden, after conferring with Warden Ray, you are to be charge free for six months and on July 9, 2019, you received a charge at Baskerville.  Your request to correspond with your son was disapproved and your grievance is being ruled as unfounded.

(ECF No. 28–3, at 1.)

Based on the foregoing allegations, White raises the following two claims for relief:

Claim One    Defendants violated White's First Amendment rights when they denied his request to correspond with his son because he had received a misconduct charge, even though White was never tried or convicted of that misconduct charge.

4

Claim Two    Defendants violated White's right to due process, when they denied his request
             to correspond with his son because he had received a misconduct charge, even
             though White was never tried or convicted of that misconduct charge.

As explained below, both claims lack merit.

### III.    ANALYSIS

#### A.    First Amendment

Defendants do not seriously dispute that White has some First Amendment right to

correspond with immediate family, like his son.  Defendants, however, contend that their actions

pass constitutional muster, because they satisfy the four-factor "reasonable relationship" test for

analyzing the constitutionality of regulations that burden prisoners' fundamental rights as set

forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (upholding restriction on inmate-to-inmate

correspondence).

*Turner* reconciled the principles that inmates retain certain important constitutional

protections with the deference owed to prison administrators "by holding that restrictive prison

regulations are permissible if they are reasonably related to legitimate penological interests, and

are not an exaggerated response to such objectives." *Beard v. Banks*, 548 U.S. 521, 528 (2006)

(internal citation omitted) (internal quotation marks omitted).  In assessing whether a regulation

is reasonable, courts must consider (1) whether a "valid, rational connection [exists] between the

prison regulation and the legitimate governmental interest put forward to justify it," (2) whether

"alternative means of exercising the right [exist] that remain open to prison inmates," (3) what

"impact accommodation of the asserted constitutional right will have on guards and other

inmates, and on the allocation of prison resources generally," and (4) whether there was an

"absence of ready alternatives" to the regulation in question. *Turner*, 482 U.S. at 89–90

(citations omitted) (internal quotation marks omitted).  In conducting this inquiry, "[t]he burden,

moreover, is not on the State to prove the validity of prison regulations but on the prisoner to

disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citing *Shaw v. Murphy*, 532 U.S. 223, 232 (2001); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987); *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)). "In ruling on a Rule 12(b)(6) motion to dismiss, the court needn't assess or address all four factors, but need only assess as a general matter whether the regulation is reasonably related to a legitimate penological interest." *Lewis v. Clark*, 663 F. App'x 697, 700 (10th Cir. 2016) (citing *Al–Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012)).

Under the first factor, the policy of prohibiting inmate-to-inmate correspondence between inmates who have received a misconduct charge within six months bears a rational relation to legitimate penological objectives. As noted in *Turner*, inmate-to-inmate mail between institutions "can be used to communicate escape plans and to arrange assaults and other violent acts." *Turner*, 482 U.S. at 91. The Supreme Court went on to find the ban on correspondence between inmates at different institutions constitutional, because it reasonably related to preserving internal security. *Id.* at 91–92. The limited restriction on inmate-to-inmate correspondence at issue here unquestionably relates to legitimate penological objectives.

Additionally, the remaining factors, to the extent applicable, clearly favor the conclusion that the policy at issue is reasonable. Under the second factor, White retained the ability to correspond with a wide range of individuals. Further, this policy does not not prohibit White from corresponding with his family members, including his incarcerated son, provided that White remained charge free for six months. *See Maldonado v. Bruce*, No. CV–07–127–BLG– RFC, 2008 WL 5435315, at *4 (D. Mont. July 16, 2008) (upholding a temporary disruption of correspondence between inmate and his incarcerated wife).

White's true complaint appears to be that Defendants should not be allowed to use a misconduct charge, without an actual conviction, as a basis for denying his request to correspond

6

with his incarcerated son. White's circumstances here suggest the reasonableness of the policy at issue. On July 9, 2019, prison staff at BCC perceived that White had violated prison rules and charged White with engaging in institutional misconduct. Rather than maintain White at BCC, prison officials transferred White to GCC. The accommodation that White proposes would require Defendants to maintain an inmate at an institution where he allegedly engaged in misconduct until they resolved the charge before the charge can have any impact on his privileges. It may often be the case that for the sake of certain minor charges or where the evidence of the charge is thin, security interests warrant simply transferring the inmate to another institution and not conducting a hearing on the charge. For example, when there is an altercation among two inmates, it may often be the case that transferring one of the inmates to another institution is more efficient than ascertaining which inmate bears primary responsibility for the altercation. Requiring a hearing in every instance could have substantial impact on the allocation of prison resources. Moreover, tying White's ability to even apply for an exception to the rule prohibiting correspondence between inmates until he remained charge-free for six months would encourage White to avoid engaging in misconduct or even actions that could be perceived as misconduct. Defendants' policy of limiting correspondence between related inmates unless the requesting inmate has been charge-free for six months reasonably relates to legitimate penological objectives. Accordingly, Claim One will be DISMISSED.

### B. Due Process

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim calls for identifying whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself, or

7

from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). As explained below, White fails to demonstrate that the Defendants' action affected any protected liberty interest.

### 1.   The Constitution Fails to Confer a Liberty Interest in Avoiding a Temporary Limitation on White's Ability to Correspond with His Son.

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Thus, the Constitution itself does not give rise to a liberty interest in temporary restrictions on the ability to correspond with incarcerated relatives. *See id.*

### 2.   White Does Not Enjoy a State-Created Liberty Interest in Avoiding a Temporary Limitation on the Ability to Correspond with His Son.

Demonstrating the existence of a state-created liberty interest requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487 (1995); *see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citations omitted). If the nature of the restraint that the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from that restraint." *Puranda*, 2009 WL

8

3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong,* 209 F.3d 63, 66 (2d Cir. 2000)).

White fails to demonstrate that that the temporary limitation of his ability to correspond with his incarcerated son constitutes an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Farthing v. Godfrey*, 2021 WL 377192, at *6 (E.D. Va. Feb. 3, 2021) (concluding that "the temporary deprivation of phone and visitation privileges" did not impose an atypical and significant hardship (citing *Anbessa v. Riddick*, 2016 WL 1755872, at *3 (E.D. Va. May 2, 2016))); *see also Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (citing examples of state laws found not to create a protected liberty interest); *Solliday v. Fed. Officers*, 413 F. App'x. 206, 210 (11th Cir. 2011) (same); *Conn v. Stolle*, 2011 WL 3321136, at *3 (E.D. Va. July 29, 2011) (concluding that loss of television, telephone, recreation and visitation privileges did not warrant constitutional protection). Accordingly, White fails to state a claim for the denial of due process. Therefore, Claim Two will be DISMISSED.

## IV.   CONCLUSION

White's claims will be DISMISSED for failure to state a claim. The Motion to Dismiss (ECF No. 27) will be GRANTED. The action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to White.

/s/

David J. Novak
United States District Judge

Richmond, Virginia
Dated: August 9 ,2021

9